**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FACING FOSTER CARE IN ALASKA, *et al*., | |
| Plaintiffs, | |
| v. | Case No. 1:21-cv-00308-KBJ |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR REMAND WITHOUT VACATUR OR, IN THE ALTERNATIVE, A STAY OF PROCEEDINGS**

## TABLE OF CONTENTS

Table of Authorities .................................................................................................ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND .......................................................................................................... 2

    I. The 2016 and 2021 HHS Grants Rules.............................................................. 2

    II. The Pending Litigation. ..................................................................................... 5

ARGUMENT ............................................................................................................... 7

    I. Remand without vacatur is prejudicial to Plaintiffs and is not necessary for
    Defendants to reconsider the challenged Rule ................................................... 8

        A. Remand without vacatur would unduly prejudice Plaintiffs. ...................... 8

        B. Voluntary Remand without Vacatur is Unnecessary. ................................. 12

    II. If the Court decides to remand, it should also vacate the 2021 Rule. ..................... 13

        A. The Court has authority to vacate the 2021 Grants Rule............................. 14

        B. Vacatur of the 2021 Rule is appropriate under *Allied-Signal.* ................... 16

    III. Defendants' requested indefinite stay, which is untethered from the effective date
    of the 2021 Rule, is unnecessary and prejudicial................................................. 20

    CONCLUSION.......................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L. Pharma, Inc. v. Shalala*,
     62 F.3d 1484 (D.C. Cir. 1995) ................................................................24

*All. for Wild Rockies v. Marten*,
     No. 17-cv-21-M-DLC, 2018 WL 2943251 (D. Mont. 2018)................................20

*Allied Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
     988 F.2d 146 (D.C. Cir. 1993) ..............................................6, 13, 18, 21

*Allina Health Servs. v. Sebelius*,
     746 F.3d 1102 (D.C. Cir. 2014) ..............................................................23

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
     934 F.3d 649 (D.C. Cir. 2019) ....................................................19, 21

*Am. Equity Inv. Life Ins. Co. v. SEC*,
     613 F.3d 166 (D.C. Cir. 2010) ..............................................................23

*Am. Forest Res. Council v. Ashe*,
     946 F. Supp. 2d 1 (D.D.C. 2013) ..............................................................17

*Am. Pub. Gas Ass'n v. DOE*,
     No. 20-1068, 2022 WL 151923 (D.C. Cir. Jan. 18, 2022) ....................6, 13, 14, 24

*Am. Waterways Operators v. Wheeler*,
     427 F. Supp. 3d 95 (D.D.C. 2019) ..............................................................15

*Bldg. Indus. Legal Def. Found. v. Norton*,
     231 F. Supp. 2d 100 (D.D.C. 2002) ..............................................12, 19

*Carpenters Indus. Council v. Salazar*,
     734 F. Supp. 2d 126 (D.D.C. 2010) ..............................................................20

*Cigar Ass'n of Am. v. FDA*,
     436 F. Supp. 3d 70 (D.D.C. 2020) ..............................................................23

*In re Clean Water Act Rulemaking*,
     No. 20-cv-4636-WHA, 2021 WL 4924844 (N.D. Cal. 2021) ....................18, 19, 21

*Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Salazar*,
     07–876, slip op. (D.N.M. 2009)..............................................................20

ii

*Comcast Corp. v. Fed. Commc'ns Comm'n*,
   579 F.3d 1 (D.C. Cir. 2009) ...................................................................................22, 23

*Conservation L. Found. v. Ross*,
   No. 18-cv-01087-JEB, 2019 WL 1359284 (D.D.C. Mar. 26, 2019) ......................................18

*In re Core Commc'ns, Inc.*,
   531 F.3d 849 (D.C. Cir. 2008) (Griffith, J., concurring) ..........................................24

*Ctr. for Biological Diversity v. Ross*,
   480 F.Supp.3d 236 (D.D.C. 2020) ...................................................................................24

*Ctr. for Native Ecosystems v. Salazar*,
   795 F. Supp. 2d 1236 (D. Colo. 2011)..............................................................................20

*Daimler Trucks N. Am. LLC v. EPA*,
   737 F.3d 95 (D.C. Cir. 2013) ...........................................................................................23

*DHS v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020)......................................................................................................24

*Family Equality v. Azar*,
   No. 20-cv-02403 (MKV) (S.D.N.Y., Apr. 2, 2020), Dkt. No. 23............................................9

*FBME Bank v. Lew*,
   142 F. Supp. 3d (D.D.C. 2015) ........................................................................................17

*Home Builders Ass'ns of N. Cal. v. Norton*,
   293 F. Supp. 2d 1 (D.D.C. 2002) .....................................................................................19

*Ind. & Mich. Elec. Co. v. Fed. Power Comm'n*,
   502 F.2d 336 (D.C. Cir. 1974) .........................................................................................19

*Kiakombua v. Wolf*,
   498 F. Supp. 3d 1 (D.D.C. 2020) .....................................................................................19

*Limnia, Inc. v. DOE*,
   857 F.3d 379 (D.C. Cir. 2017)....................................................................................13, 17

*Mozilla Corp. v. Fed. Commc'ns Comm'n*,
   940 F.3d 1 (D.C. Cir. 2019) .............................................................................................23

*Muthana v. Pompeo*,
   985 F.3d 893 (D.C. Cir. 2021) .........................................................................................20

*NAACP v. Trump*,
   298 F.Supp.3d 209 (D.D.C.), *aff'd & remanded sub nom* ......................................................24

*Nat. Res. Def. Council v. DOI,*
    275 F. Supp. 2d 1136 (C.D. Cal. 2002) ...............................................20

*Nat. Res. Def. Council v. EPA,*
    489 F.3d 1250 (D.C. Cir. 2007) (Randolph, J., concurring) ......................12, 14, 24

*Nat'l Ass'n of Home Builders v. Evans,*
    No. 00-cv-2799, 2002 WL 1205743 (D.D.C. 2002) ...............................20

*Nat'l Parks Conservation Ass'n v. Salazar,*
    660 F. Supp. 2d 3 (D.D.C. 2009) ......................................................20

*Pascua Yaqui Tribe v. EPA,*
    No. 20-cv-00266-TUC-RM, 2021 WL 3855977 (D. Ariz. 2021) ..........................20

*Shands Jacksonville Med. Ctr. v. Burwell,*
    139 F. Supp. 3d 240 (D.D.C. 2015) ...................................................21

*Sierra Club v. Van Antwerp,*
    560 F. Supp. 2d 21 (D.D.C. 2008) ...............................................17, 18

*Stand Up for California! v. U.S. Dep't of the Interior,*
    No. 12-cv-2039-BAH, 2013 WL 12203229 (D.D.C. 2013) ..........................19

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ..................................................................21

**Statutes**

5 U.S.C. § 705...............................................................................10, 11

5 U.S.C. § 706...............................................................................20

29 U.S.C. § 794..............................................................................7

42 U.S.C. § 671..............................................................................7

42 U.S.C. § 2000d...........................................................................7

42 U.S.C. § 3001.............................................................................8

42 U.S.C. § 6102............................................................................7

**Other Authorities**

45 C.F.R. 75.101............................................................................9

45 C.F.R. § 75.300..........................................................................8, 9

48 C.F.R. § 352.237-74.................................................................................................8

81 Fed. Reg. 45,270, 45,272 (July 13, 2016)...............................................................8

81 Fed. Reg. 89,393 (Dec. 12, 2016)...........................................................................8

84 Fed. Reg. 63,809 (Nov. 19, 2019).....................................................................9, 16

84 Fed. Reg. 63,831 (Nov. 19, 2019)...........................................................................9

86 Fed. Reg. 2,257 (Jan. 12, 2021).......................................................................9, 10

Exec. Order No. 13988, 86 Fed. Reg. 7023 (Jan. 20, 2021).......................................26

## INTRODUCTION

Defendants, the U.S. Department of Health and Human Services (HHS) and its Secretary, first told the Court that they were reviewing the 2021 HHS Grants Rule nearly one year ago. Last August, they informed the Court that an additional delay until November would allow the agency to finish assessing the Rule. Instead, in December, having made no public progress on their review or providing any explanation for their delay, Defendants filed the instant motion to remand without vacatur or, in the alternative, to stay this matter.

After a year of review, remand would only be appropriate if it included vacatur of the Rule. The Rule has not gone into effect, nor do Defendants profess to intend that it ever do so. Vacatur would thus create regulatory clarity, not disruption. Moreover, the Rule, which eliminates nondiscrimination protections in HHS grants programs, is profoundly flawed. *Allied Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 152 (D.C. Cir. 1993) (setting forth standard for vacating rule). Such relief is Plaintiffs' preferred outcome. Should the Court wish to provide Defendants additional time to complete their review, it should order that vacatur occur after a reasonable period of additional time, such as 120 days. *Am. Pub. Gas Ass'n v. DOE*, No. 20-1068, 2022 WL 151923 at *8 (D.C. Cir. Jan. 18, 2022) (it may "be prudent to require an agency to fix a deficient rule by a time certain, at which the rule will automatically be vacated.").

Defendants requested remand *without* vacatur, however, and that result would prejudice Plaintiffs, Facing Foster Care in Alaska (FFCA), Family Equality, True Colors United, Inc., and Services & Advocacy for GLBT Elders (SAGE), because it is unbounded in time and scope. As the D.C. Circuit recently observed, "[a]n open-ended remand without vacatur … can create a new problem: The agency may have little or no incentive to fix the deficient rule." *Id*. Plaintiffs' abilities to plan their work—much of which relies on nondiscrimination protections that would be eliminated by the 2021 Rule—have been impaired during the past year of uncertainty. An

indefinite period of continued uncertainty is prejudicial. Further, during this indefinite remand, there would be no protection against the Rule going into effect, which, as Plaintiffs set forth in their earlier motion for a temporary restraining order, would cause irreparable injury. As such, Plaintiffs respectfully request that the Court vacate the Rule along with the requested remand, either immediately or after a reasonable period, or deny Defendants' motion entirely.

## BACKGROUND

### I.   The 2016 and 2021 HHS Grants Rules.

HHS administers approximately $500 billion in grants each year, making it the largest grant-making agency in the United States. HHS funds programs that provide essential health and welfare services to millions of people around the country in a wide array of programs, including—as relevant to the Plaintiffs in this case—children in foster care and their families, foster parents seeking to foster or adopt, youth experiencing homelessness, and older people in need of nutrition assistance and other services necessary to age with dignity.

Prior to 2016, these grant programs had inconsistent statutory nondiscrimination protections. Generally applicable statutes bar discrimination on the basis of race, color, national origin, disability, and age across all federal grant programs. *See* 42 U.S.C. § 2000d, 29 U.S.C. § 794, 42 U.S.C. § 6102. But statutory protection against religious or sex discrimination, including sexual orientation and gender identity, was not universal. For example, Title IV-E of the Social Security Act (which provides funding for foster care and adoption assistance through HHS) does not prohibit discrimination on the basis of religion or sex—including sexual orientation and gender identity—leaving prospective foster or adoptive parents or children unprotected from discrimination. 42 U.S.C. § 671(a)(18). And the Older Americans Act (which provides funding through HHS for a wide range of social services for older people) does not

include *any* nondiscrimination requirements of its own, leaving vulnerable older people at risk of discrimination, even in their own homes. *See* 42 U.S.C. §§ 3001 *et seq.*

In 2016, recognizing this inconsistency, HHS promulgated its Grants Regulation (the 2016 Rule), which codified broad and universal nondiscrimination requirements for HHS's grants programs. *See* Health and Human Services Grants Regulation, 81 Fed. Reg. 89,393 (Dec. 12, 2016).[1] The 2016 Rule also affirmed that HHS grant programs must "treat as valid the marriages of same-sex couples," in accordance with the Supreme Court's marriage equality cases. *Id.* at 89,395. In proposing the 2016 Rule, the agency explained the Rule reflected existing law and policy that had not previously been codified in regulation. *See* Health and Human Services Grants Regulation, 81 Fed. Reg. 45,270, 45,272 (July 13, 2016) (to be codified at 45 C.F.R. pt. 75). It also made clear that the nondiscrimination requirements imposed on grantees were consistent with those HHS already required of its contractors. *Id.*; *see also* 48 C.F.R. § 352.237-74.

Accordingly, beginning in January 2017, 45 C.F.R. § 75.300 stated:

(c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.

(d) In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

---

[1] The statutory and regulatory requirements discussed herein are in addition to HHS's constitutional obligations to ensure equal treatment in HHS-funded and/or contracted programs.

Less than three years later, HHS took two steps to gut the 2016 Rule's nondiscrimination requirements. First, on November 1, 2019, HHS issued a Notice of Nonenforcement stating that HHS would no longer enforce the 2016 Rule pending the agency's decision on a contemporaneously proposed rulemaking. Notice of Nonenforcement of HHS Grants Regulation, 84 Fed. Reg. 63,809, 63,809 (Nov. 19, 2019) (the Nonenforcement Policy). The Nonenforcement Policy was issued without prior notice or an opportunity to comment, and it is subject to an ongoing legal challenge. *See* Corrected Complaint for Declaratory and Injunctive Relief, *Family Equality v. Azar*, No. 20-cv-02403 (MKV) (S.D.N.Y., Apr. 2, 2020), Dkt. No. 23.[2] Second, HHS proposed revisions to the 2016 Rule. In so doing, HHS explained that it would require grantees to comply only with the statutory discrimination protections set forth in its various grant programs and with applicable Supreme Court decisions. *See* Health and Human Services Grants Regulation, 84 Fed. Reg. 63,831, 63,832-33 (Nov. 19, 2019).

HHS finalized the revisions without material change on January 12, 2021. Health and Human Services Grants Regulation, 86 Fed. Reg. 2,257 (Jan. 12, 2021) (the 2021 Rule). Accordingly, the 2021 Rule replaces the subparagraphs in 45 C.F.R. § 75.300(c) and (d) with the following language:

> (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services, to the extent doing so is prohibited by federal statute.
>
> (d) HHS will follow all applicable Supreme Court decisions in administering its award programs.[3]

---

[2] Some, but not all, of the Plaintiffs in this case are also participating in the challenge to the Nonenforcement Policy.

[3] The revised Rule also eliminates a provision related to the 2016 Rule at 45 C.F.R. 75.101(f) (clarifying that the 2016 Grants Rule does not apply to the Temporary Assistance for Needy

## II.     The Pending Litigation.

On February 2, 2021, Plaintiffs filed this lawsuit along with a motion for a temporary restraining order and a stay pursuant to 5 U.S.C. § 705. Dkt Nos. 1 (Complaint), 8-1 (TRO Mot.).

As alleged in the Complaint and supported in Plaintiffs' TRO filing, the 2021 Rule is arbitrary and capricious in violation of the Administrative Procedure Act (APA). TRO Mot. at 11-32. Plaintiffs also substantiated their pending irreparable injuries, should the 2021 Rule go into effect. Specifically, Plaintiff FFCA's members, current and former foster youth in Alaska, face sanctioned discrimination on the basis of their LGBTQ identity. As one young transgender woman explained in a declaration supporting the TRO filing, the staff at her state child welfare agency exacerbated the discrimination she was already facing by refusing to acknowledge her gender identity, failing to assist with LGBTQ-based bullying at school, blaming the young woman for conflict with her foster mom over her identity, and refusing to support recommended medical care to further affirm her gender. TRO Mot. at 34-36 (citing Dkt. No. 8-3). Whereas the 2016 Grants Rule would have prohibited this discrimination, the 2021 Grants Rule sanctions it. And all Plaintiffs face irreparable injury as organizations. Each serves vulnerable populations for whom the 2016 Grants Rule provided protections—LGBTQ youth in foster care or experiencing homelessness; LGBTQ families, including prospective foster and adoptive parents; and LGBTQ older people who depend on HHS-funded programs for their health and well-being. TRO Mot. at 37-43. With the loss of the 2016 Rule's explicit protections, the direct services Plaintiffs provide will be more time-consuming, limiting their ability to provide their essential services to as many people and making the services they can provide less effective. *Id.*

---

Families Program). It also makes unrelated technical changes, which Plaintiffs do not challenge. 86 Fed. Reg. at 2,272.

On February 9, 2021, the parties stipulated to a request that the Court postpone the 2021 Rule's effective date by 180 days, pursuant to 5 U.S.C. § 705, and hold the case in abeyance. Dkt. No. 17. The filing explained that "HHS currently is reviewing the Rule…. HHS stipulates to this postponement, because it will allow HHS to assess the challenged Rule without burdening the Court." *Id*. at 2. HHS also "agree[d], consistent with the requirements of 5 U.S.C. § 705, that justice so requires a stay of the effective date of the Rule." *Id*. The parties proposed that they file joint status reports every sixty days during the abeyance period. *Id*. On the same day, Judge Jackson (to whom the case was then assigned) entered an order providing the requested relief. Dkt. No. 18.

On August 4, 2021, the parties filed a second stipulated request that the Court postpone the Rule's effective date by another 90 days and hold the case in abeyance. Dkt. No. 22. In that filing, Defendants explained that HHS had been reviewing the 2021 Rule, and that "[t]hat review continues, although it has been prolonged by personnel turnover and concurrent review of related issues.… This postponement will allow HHS to finish assessing the Rule without burdening the Court." *Id*. at 2. Judge Contreras (who reviewed filings in this matter after Judge Jackson was elevated to the D.C. Circuit) entered the requested relief. Dkt. No. 23.

HHS did not finish its assessment of the Rule during the second postponement period. Instead, on November 3, 2021, the parties filed a third stipulated request for postponement of the Rule's effective date, until January 17, 2022, explaining "Defendants continue to review the Rule." Dkt. No. 26 at 2. As explained in that filing, "Plaintiffs stipulate to this postponement even though they understood Defendants' August 4, 2021, stipulation to have been made with the expectation that HHS would have finished assessing the Rule without an additional

postponement." *Id.* Judge Contreras entered the proposed stipulation. Minute Order (Nov. 3, 2021).

On December 15, 2021, Defendants filed the instant motion. Dkt. No. 28 (Mot.). On December 23, the parties filed a consent motion to extend Plaintiffs' time to respond past the winter holidays, to postpone the Rule's effective date until April 18, 2022, and to continue holding the case in abeyance (except the pending motion). Dkt. No. 29. Defendants explained that they "continue to review the Rule, and they have asked the Court to remand the Rule to HHS. The proposed additional stipulated postponement will allow HHS to finish assessing the Rule and to explore its administrative options without burdening the Court." *Id.* at 2. This Court entered the requested relief shortly thereafter. Dkt. No. 30.

## ARGUMENT

Defendants have been reviewing the challenged Rule for nearly one year without apparent progress. An indefinite remand at this point makes further delay likely and impairs Plaintiffs' abilities to target their work strategically and plan for future work. Should the Rule go into effect while on remand, an outcome Defendants' motion makes possible, Plaintiffs would be even further prejudiced. Defendants provide no compelling justification for remand that would outweigh this prejudice—remand without vacatur is not necessary for Defendants to continue their ongoing reconsideration process, nor is the litigation demanding of either their or the Court's resources. Defendants' motion should be denied because remand without vacatur creates no benefits that outweigh the prejudice to Plaintiffs. *Util. Solid Waste Activities Grp. v. EPA*, 901 F. 3d 414, 436 (D.C. Cir. 2018) (considering undue prejudice to nonmoving party).

In contrast, ordering remand *with vacatur* would avoid such prejudice to Plaintiffs and is well within the Court's authority. *See*, *e.g*., *Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 101 (D.D.C. 2002) (granting voluntary motion for remand and vacatur prior to

summary judgment briefing). Given the serious infirmities of the 2021 Rule and the straightforward conclusion that vacatur would cause no disruption because the Rule has not gone into effect, the Court should not hesitate to vacate it. *Allied-Signal,* 988 F.2d at 150-51. Further, it is unlikely that Defendants intend to repromulgate the same Rule at the end of their requested remand, considering their stated goal of combatting sex discrimination, Mot. at 1, 6—meaning that vacatur would not be harmful to them. Or, if the Court wishes to provide Defendants additional time to complete their reconsideration process, it should order that vacatur be delayed until 120 days have passed since remand. *See Am. Pub. Gas Ass'n*, 2022 WL 151923, at *8.

Finally, Defendants' alternate remedy of an indefinite stay suffers from the same defects as their request for remand—it provides no meaningful benefit and is prejudicial to Plaintiffs.

## I. Remand without vacatur is prejudicial to Plaintiffs and is not necessary for Defendants to reconsider the challenged Rule.

A "voluntary remand request made in response to a party's APA challenge may be granted only when the agency intends to take further action with respect to the original agency decision on review." *Limnia, Inc. v. DOE*, 857 F.3d 379, 386 (D.C. Cir. 2017). Once that threshold requirement is satisfied, a court has "broad discretion to grant or deny an agency's motion to remand." *Util. Solid Waste Activities Grp*, 901 F.3d at 436. Before granting such a motion, the court must "consider whether remand would unduly prejudice the non-moving party" and whether "the agency's request appears to be frivolous or made in bad faith." *Id.*

### A. Remand without vacatur would unduly prejudice Plaintiffs.

Remand without vacatur will reward Defendants' delay in resolving their position as to the 2021 Rule and will likely cause further delay. Such delay prejudices Plaintiffs by preventing them from planning their services based on known regulatory requirements. Further, because the

remand is untethered from future postponements of the effective date of the challenged Rule, it creates the extremely prejudicial possibility that the Rule will go into effect during remand.

As to the prejudice caused by additional delay, Plaintiffs have waited a year for Defendants to determine their position on the Rule, and now face future uncertainty from an indefinite remand. It strains credulity to believe that Defendants' decision-making would not be further delayed should their motion be granted, especially given the lack of assurances from Defendants as to timing. Indeed, when courts "simply remand the agency has no … incentive to act in a reasonable time." *Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1263 (D.C. Cir. 2007) (Randolph, J., concurring); *see also Am. Pub. Gas Ass'n*, 2022 WL 151923, at *8 ("common sense and the empirical literature confirm" that agencies "have little or no incentive to fix [a] deficient rule" under "[a]n open ended remand without vacatur").

While the 2021 Rule's harms to Plaintiffs were ameliorated by its postponement, they were not eliminated. The 2016 Rule enabled Plaintiffs to educate the vulnerable populations Plaintiffs serve about their rights, support them in obtaining essential services from nondiscriminatory providers, and educate HHS-funded providers about those providers' nondiscrimination obligations. TRO Mot. at 38-41. Prolonged uncertainty about the status of the 2016 Rule's nondiscrimination protections vis-a-vis the 2021 Rule makes it difficult for Plaintiffs to do this work and make long-term plans for their services. For example, Family Equality has held off on its plans to help young people and families file complaints with the HHS Office for Civil Rights regarding sexual orientation and gender identity discrimination because the uncertainty about the 2021 Rule makes it unclear whether there is a regulatory foundation to do so. *Cf.* Decl. of Denise Brogan-Kator, Dkt. No. 8-4 ¶ 9. In addition, Family Equality previously relied on the 2016 Rule to educate state lawmakers about the harm caused by license

to discriminate laws, but its ability to plan these efforts is limited because of the uncertainty surrounding that Rule. *Cf. Id.* ¶ 12. Similarly, TCU has relied on the 2016 Rule to convince service providers of the value of making their services nondiscriminatory—many service providers are not hostile, but simply haven't focused on the needs of LGBTQ youth—but these education campaigns are difficult to plan given the uncertain fate of the 2016 Rule. *Cf.* Decl. of Dylan Waguespack, Dkt. No. 8-6 ¶ 12; Likewise, FFCA had intended to rely on the 2016 Rule's nondiscrimination protections in a handbook it is developing on the legal rights of foster youth, but has been unable to include such information in light of the continued uncertainty surrounding the Rule. *Cf.* Decl. of Amanda Metivier, Dkt. No. 8-2 ¶ 16. Finally, SAGE relied on the 2016 Rule's recognition that older LGBTQ people should not be discriminated against when receiving services in its efforts to obtain protective designations at the state level, but it is unclear whether it will be able to continue doing so as it plans future campaigns. *Cf.* Decl. of Aaron Tax, Dkt. No. 8-5 ¶¶ 17-18; *see also Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 99 (D.D.C. 2019) (undue prejudice where voluntary remand would leave interested parties "in limbo").

Indefinite remand also creates the possibility that the 2021 Rule would become effective during the remand period, further prejudicing Plaintiffs. *See* TRO Mot. at 32-43 & exhibits referenced therein (substantiating irreparable injury that would be caused by the 2021 Rule). The current postponement of the Rule's effective date resulted from a stipulated agreement. But Defendants make no representations in their filing about future stipulations, and there is no guarantee that the parties will be able to negotiate these stipulations going forward. While Defendants may not intend this outcome (and appear to intend to promulgate a different rule), Defendants' policy priorities and views may change with the passage of time or—depending on the length of a remand—a future change in administration. It would be extremely prejudicial to

Plaintiffs for the Rule to become effective during the requested remand, but the remand provides no protection against this outcome.[4] If Defendants do not intend to let the Rule become effective while remanded, then the Rule should be vacated, as discussed below.

Defendants argue that there is no prejudice because they have refused to enforce the 2016 Rule since 2019. But, as Plaintiffs explained in their TRO filing and substantiated via declarations, while the continued existence of HHS's Nonenforcement Policy as to the 2016 Rule is harmful (and unlawful), the 2021 Rule exacerbates those harms and causes independent injuries. TRO Mot. at 42 ("when the 2016 Grants Rule was in place, even with the Nonenforcement Policy, [Plaintiffs] could rely on it as a formal prohibition on discrimination.… The 2021 Grants Rule removes the formal protections and does so on a more permanent basis than a temporary nonenforcement policy.") (citing Plaintiff declarations). A federal regulatory requirement—even if unenforced—can still shape the behavior of regulated parties, especially those that are not overtly hostile to the nondiscrimination protections, but simply have not taken the initiative to ensure their programs are not discriminatory. *See*, *e.g*., Declaration of Aaron Tax, Dkt. No. 8-5 (explaining that SAGE's work to obtain state designations of LGBTQ older people as a population of "greatest social need," which it has recently pursued in locations such as the District of Columbia, benefitted from the baseline requirements of the 2016 Rule, even while the Nonenforcement Policy was in place). And, in any event, Defendants ignore the pending challenge to the Nonenforcement Policy, which could result in vacatur of that policy, thereby making the prejudice to Plaintiffs from remand even more apparent.

---

[4] Defendants' request also eliminates the procedural protections Plaintiffs currently enjoy, namely their ability to seek information and negotiate in advance of periodic joint status reports (which would be substituted with status reports only from Defendants), and the automatic reinstatement of their TRO Motion at the end of the periodic abeyance periods, barring stipulation to extend the abeyance. *See* Dkt. Nos. 23, 30, Minute Order (Nov. 3, 2021).

**B.  Voluntary Remand without Vacatur is Unnecessary.**

In light of the prejudice posed to Plaintiffs, Defendants do not provide sufficiently good reasons for the Court to remand this matter without vacatur.

Remand is not necessary for judicial economy or to preserve the parties' resources. Defendants do not face any upcoming deadlines in this matter (other than the ones related to their motion itself). And if they conclude the ongoing reconsideration process in a reasonable time frame, it is possible they never will. Nor do Defendants explain what "greater administrative options" are available on remand that are not currently available. Mot. at 9.

Defendants' remand request is also vague as to their plans and unbounded in time, making it appear not fully considered. First, Defendants do not establish that they "intend[] to take further action with respect to the *original agency decision on review*," as the D.C. Circuit requires before granting voluntary remand. *Limnia,* 857 F.3d at 386. Instead, they explain that remand will facilitate "HHS's intention to consider its regulatory and *other administrative options in addressing*" its concerns about the Rule. Mot. at 6 (emphasis added). Potential other administrative options—whatever HHS is contemplating—do not meet the requirement stated clearly by *Limnia* that the agency intend to act on the particular decision on review, namely the 2021 Rule. Defendants' lack of specificity as to their intentions contrasts notably with cases in which an agency's articulation of its plans is sufficiently precise to justify remand over the opposition of a plaintiff. *See*, *e.g*., *FBME Bank v. Lew*, 142 F. Supp. 3d, 70, 73 (D.D.C. 2015) (granting remand for agency to correct inadequacies in notice and comment process and to consider viable alternatives); *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 41-2 (D.D.C. 2013) (granting voluntary remand for agency to reconsider a critical habitat designation in light of identified case law requiring particular treatment of designated areas); *Sierra Club v. Van*

*Antwerp*, 560 F. Supp. 2d 21, 24-5 (D.D.C. 2008) (granting voluntary remand for the Army Corps of Engineers to reconsider the environmental impact of identified discharges).

Nor do Defendants propose a timeframe for the remand, without which the Court cannot meaningfully assess Defendants' plans for further action. In contrast, in *Utility Solid Waste Activities Group*, the agency identified three provisions of the challenged rule that it intended to reconsider and "submitted a proposed timeline to the court." 901 F.3d at 437. In so doing, it satisfied the "requirement for remand that it 'take further action with respect to the original agency decision on review.'" *Id.* (quoting *Limnia*, 857 F.3d at 386 (emphasis omitted)); *see also*, *e.g.*, *Conservation L. Found. v. Ross*, No. 18-cv-01087-JEB, 2019 WL 1359284, at *4 (D.D.C. Mar. 26, 2019) (exercising discretion to grant voluntary remand of thirty days given its "limited nature … in both duration and scope").

Defendants also fail to explain the changing expectations about their timeline for action to date. When they had not finished their review during the first postponement of the Rule's effective date, Defendants explained why the review had been prolonged (personnel turnover and review of related issues) and told the Court that 90 more days "will allow HHS to finish assessing the Rule." Dkt. No. 22 at 2. That expected deadline came and went without any explanation for the agency's further delay. Dkt. No. 26. Now Defendants seek an indefinite period for further review. Defendants have had one year to conduct their review so far. They do not need unlimited time to make what is essentially a policy choice.

## II.      If the Court decides to remand, it should also vacate the 2021 Rule.

If the Court decides to remand this matter, it should order remand with vacatur. The Court has authority to provide such relief in this procedural posture. *In re Clean Water Act Rulemaking*, No. 20-cv-4636-WHA, 2021 WL 4924844, at *5 (N.D. Cal. 2021). While Defendants have been vague about their intentions, there is no indication that they intend the

Rule to be repromulgated or become effective as written.[5] Moreover, the Rule never went into effect, so vacating it would not be disruptive. When those facts are coupled with the seriousness of the Rule's deficiencies, the standard for vacatur under *Allied-Signal* is easily met. 988 F.2d at 150-1. This outcome is consistent with the principle that "remand without vacating [a] rule" may occur only in "rare cases." *Am. Bankers Ass'n v. Nat'l Credit Union Admin*., 934 F.3d 649, 674 (D.C. Cir. 2019) (quotation omitted).

### A.  The Court has authority to vacate the 2021 Grants Rule.

"A court sitting in review of an administrative agency is vested with equity powers" and "'may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.'" *Ind. & Mich. Elec. Co. v. Fed. Power Comm'n*, 502 F.2d 336, 346 (D.C. Cir. 1974) (quoting *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939)). Indeed, "[i]t is black letter law that vacatur is a form of equitable relief that the Court may award, withhold and craft to fit the circumstances of the case before it." *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 50 (D.D.C. 2020) (quotation omitted); *see also Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019) (remand without vacatur is an "equitable remedy"). As particularly relevant here, "when an agency requests voluntary remand, a district court may vacate an agency's action without first making a determination on the merits." *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *5.

Consistent with this equitable authority, courts in this District have vacated agency action prior to deciding the merits. For example, in *Building Industry Legal Defense Foundation v. Norton*, the agencies' motion for voluntary remand with vacatur—filed prior to any merits

---

[5] Regardless of Defendants' current intentions, the risk that this could happen in the future is still prejudicial to Plaintiffs. In any event, if this were their intention, the delay in ultimately adjudicating this harmful Rule would be inefficient and unduly prejudicial.

briefing and opposed by defendant-intervenors in the case—was granted by Judge Bates pursuant to *Allied-Signal*. 231 F. Supp. 2d at 104; *cf. Stand Up for California! v.U.S. Dep't of the Interior*, No. 12-cv-2039-BAH, 2013 WL 12203229, at *3 (D.D.C. 2013) (applying *Allied-Signal* to determine whether vacatur was appropriate in response to the agency's motion for voluntary remand without vacatur). Likewise, courts in this District have repeatedly vacated agency action via consent decrees before reaching the merits. *See, e.g.*, *Home Builders Ass'ns of N. Cal. v. Norton*, 293 F. Supp. 2d 1, 4-5 (D.D.C. 2002); *Nat'l Ass'n of Home Builders v. Evans*, No. 00-cv-2799, 2002 WL 1205743, at *3 (D.D.C. 2002).[6]

While two judges in this District have called into question the Court's authority to vacate in the absence of a merits determination, those decisions are not controlling. *See Muthana v. Pompeo*, 985 F.3d 893, 901 (D.C. Cir. 2021). In both cases, the principal concern was that vacatur would allow an agency to repeal a rule without public notice and comment, thus bypassing the APA's requirements without judicial consideration of the merits. *See Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-6 (D.D.C. 2010); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4-5 (D.D.C. 2009). But "[t]his argument ignores the distinction between judicial and agency action," the former of which "is not subject to the

---

[6] Other district courts have similarly recognized and exercised their authority to vacate in response to pre-merits requests for voluntary remand. *See, e.g.*, *Pascua Yaqui Tribe v. EPA*, No. 20-cv-00266-TUC-RM, 2021 WL 3855977, at *4 (D. Ariz. 2021) (rejecting argument that "remand with vacatur [is] inappropriate in the absence of a merits adjudication...."); *Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011) (same); *All. for Wild Rockies v. Marten*, No. 17-cv-21-M-DLC, 2018 WL 2943251, at *2–3 (D. Mont. 2018) (remanding with vacatur prior to making a final determination on the merits); *Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Salazar*, 07–876, slip op. at 5 (D.N.M. 2009) (applying *Allied-Signal* to determine whether vacatur was appropriate in response to an agency's pre-merits request for voluntary remand without vacatur); *Nat. Res. Def. Council v. DOI*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002) (same, noting that "the same equitable analysis for vacatur of the rules during remand should apply here," even though "the Court [did] not actually rule on the merits….").

APA['s]" notice and comment requirements. *Ctr. for Native Ecosystems*, 795 F. Supp. 2d at 1241. Instead of being cabined by the APA's procedural requirements, vacatur is an equitable remedy within the district court's discretion. And the APA contains "no express jurisdictional limitation[s]" on a court's "traditional equitable discretion."[7] In other words, "because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits." *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *5 (quoting *Ctr. for Native Ecosystems*, 795 F. Supp. 2d at 1242); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." (quotations omitted)).

### B.  Vacatur of the 2021 Rule is appropriate under *Allied-Signal*.

"The decision whether to vacate depends on the seriousness of the order's deficiencies ... and the disruptive consequences of an interim change that may itself be changed." *Allied–Signal,* 988 F.2d at 150 (quotation omitted). While both prongs are met here, because there is a "strong showing" that vacatur would not lead to any disruption, the need to establish the seriousness of the Rule's deficiencies is "obviate[d]." *Am. Bankers Ass'n v. Nat'l Credit Union Admin*., 934 F.3d at 674; *see also Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015) ("There is no rule requiring either the proponent or opponent of vacatur to prevail on both factors.").

---

[7] The District of Colorado has explained that while the APA's judicial review language directs courts to "set aside agency action . . . found to be arbitrary and capricious," 5 U.S.C. § 706(2)(A)—i.e., after a finding on the merits—that language does not limit the court's ability to grant vacatur in other circumstances. *Ctr. for Native Ecosystems*, 795 F. Supp. 2d at 1241.

On the first factor, the 2021 Rule is riddled with serious deficiencies, which are set forth in detail in Plaintiffs' TRO motion. TRO Mot. at 12-32. To begin, each of HHS's six justifications for the rule is arbitrary and capricious in violation of the APA because they did not appear in the notice of proposed rulemaking, represent an unexplained departure from the agency's prior policies, rest on flawed legal analyses, are internally inconsistent, run counter to the evidence before the agency, and/or are otherwise unreasoned. *Id.* at 12-25. To take just one example, the 2021 Rule claims that eliminating the 2016 Rule's nondiscrimination protections will make grant programs more effective by ensuring continued participation of faith-based service providers, who would otherwise be "deterr[ed]" from providing services by the "regulatory barriers" posed by the 2016 Rule. *Id.* at 19-20 (quoting 86 Fed. Reg. at 2,257). In other words, the 2021 Rule claims that it will result in more providers by allowing providers to discriminate. *Id.* But this claim is contradicted by other portions of the 2021 Rule that explicitly deny that the Rule will result in grantees "discriminat[ing] against vulnerable populations or deny[ing] services to the intended beneficiaries of departmental programs." *Id.* at 20 (quoting 86 Fed. Reg. at 2,268). Such internal inconsistency is the hallmark of arbitrary and capricious reasoning. *Id.* And the fact that the agency did not think through the actual consequences of the 2021 Rule—which were raised by commenters—raises doubt about the ability to rehabilitate it on remand, should HHS even desire to do so. *See Comcast Corp. v. Fed. Commc'ns Comm'n*, 579 F.3d 1, 8 (D.C. Cir. 2009) ("[W]e have not hesitated to vacate a rule when the agency has not responded to empirical data or to an argument inconsistent with its conclusion.").

The 2021 Rule also fails to consider an important aspect of the problem—namely, the harms to program beneficiaries that will result from its decision to authorize discrimination. *Id.* at 25-32. As the record makes abundantly clear, there is a longstanding and well-documented

pattern of discrimination by service providers on the basis of religion and LGBTQ identity. *Id.* at 27-28. Further, the 2016 Rule's regulatory protections were, for many grant programs, the only codified protections against such discrimination. *Id.* at 27. Yet HHS ignored this record evidence, summarily concluding that there is "little evidence" of discrimination prior to the 2016 Rule. *Id.* (quoting 86 Fed. Reg. at 2,268). Consistent with this flawed conclusion, the 2021 Grants Rule entirely fails to grapple with the consequences of eliminating the 2016 Rule's nondiscrimination protections, which include both increased discrimination for vulnerable program beneficiaries and the economic costs that flow from such discrimination (such as the long-term costs that result from discrimination in housing and health care). *Id.* at 27-32. Failure to consider these meaningful costs is the kind of error that requires vacatur. *See Cigar Ass'n of Am. v. FDA*, 436 F. Supp. 3d 70, 89 (D.D.C. 2020) ("The D.C. Circuit has said that the failure to address an important aspect of the problem is a major shortcoming" and "has repeatedly vacated agency actions with that flaw.") (collecting cases).

Indeed, Defendants' own motion indicates that they may well adopt a different rule on remand. Mot. at 1 (referring to "the Administration's goals of combatting sex-based discrimination and of fully enforcing all laws that prohibit such discrimination"); *Id.* at 4 ("HHS's actions on remand may fully address and resolve Plaintiffs' concerns—or, at least, narrow the issues that Plaintiffs wish to pursue—and may generate a different record for judicial review"). That outcome would be consistent with the Administration's long-stated priorities, as well as Defendants' earlier conclusion that "justice [] requires a stay of the effective date of the Rule." Dkt. No. 17 at 2. This likelihood also weighs in favor of vacatur. *Cf. Mozilla Corp. v. Fed. Commc'ns Comm'n*, 940 F.3d 1, 86 (D.C. Cir. 2019) (the first *Allied-Signal* prong weighs against vacatur when the agency is likely to "reach[] the same result" on remand).

In any event, the second *Allied-Signal* prong is dispositive because vacatur will have no disruptive effect. The 2021 Rule "has not yet gone into effect"—at the Defendants' agreement—meaning that vacatur has no disruptive consequences. *Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166, 179 (D.C. Cir. 2010). Indeed, unless Defendants intend to allow it to become effective, which they have never suggested, they will suffer no harm from vacatur. In such circumstances, the D.C. Circuit almost always grants the ordinary remedy of vacating the rule. *See*, *e.g*., *id*.; *Daimler Trucks N. Am. LLC v. EPA*, 737 F.3d 95, 103 (D.C. Cir. 2013) (vacating where it "would not cause any harm"); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) (vacating where "there [was] no indication that vacatur would lead to disruptive consequences"). In contrast, remand without vacatur risks disruption by leaving open the possibility that the Rule will go into effect, even though Defendants may decide – indeed, given their statements to this Court, should decide – that it should never be implemented.

Alternately, if the Court orders remand but declines to vacate the 2021 Rule now, it should exercise its equitable authority to order that the Rule be vacated after 120 days so that the agency may complete its reconsideration process on remand. Such an approach is common in this Circuit. Just recently, the D.C. Circuit ordered that a rule that it remanded be vacated after 90 days—*even though the rule's deficiency could likely be remedied*. *Am. Pub. Gas Ass'n*, 2022 WL 151923 at *9. The Court explained that because indefinite remand may cause agency delay, it may "be prudent to require an agency to fix a deficient rule by a time certain, at which the rule will automatically be vacated." *Id.* at *8; *see also In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring) (urging future panels to consider alternatives to "open-ended remand without vacatur"); *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1492 (D.C. Cir. 1995) (ordering automatic vacatur if agency did not provide adequate justification within 90

days); *NAACP v. Trump*, 298 F.Supp.3d 209, 244 (D.D.C.) ("[A] court may vacate the unlawful action but stay its order of vacatur for a limited time to allow the agency to attempt to cure the defects…"), *aff'd & remanded sub nom; DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020); *Ctr. for Biological Diversity v. Ross*, 480 F.Supp.3d 236, 246 (D.D.C. 2020) ("Vacatur plus a nine-month stay is also appropriate, in the Court's equitable discretion, because it gives [the agency] an incentive to complete the Plan amendments within the timeframe the agency has provided."); *cf. Nat. Res. Def. Council*, 489 F.3d at 1264 (Randolph, J., concurring) ("The existence of a stay with time limits, rather than an open-ended remand without vacating, will give the agency an incentive to act in a reasonable time. . . ."). A similarly time-limited approach would balance Defendants' preference for remand with protecting Plaintiffs from the undue harm caused by remand without vacatur.

### III.    Defendants' requested indefinite stay, which is untethered from the effective date of the 2021 Rule, is unnecessary and prejudicial.

Defendants' arguments for an indefinite stay are no more compelling than for remand. The Court should deny this request as well.

First, they rely heavily on the argument that an indefinite stay is necessary to conserve the agency resources that would otherwise be devoted to reviewing the challenged Rule. Mot. at 10. Just as with respect to remand, this efficiency argument is unmoored from the facts and history of this case. The litigation has not been demanding of Defendants or the Court, nor is there an imminent deadline or case schedule that would make it so. The parties have agreed to sequential periods of abeyance for months at a time. Nothing in Defendants' filing substantiates the "undue hardships" they claim will result from denial of their request that these stay periods become unlimited. *Id*.

Contrary to Defendants' characterization, Plaintiffs have not demanded and are not demanding that Defendants both reconsider the challenged Rule and defend it simultaneously—although Plaintiffs would be entirely within their rights to do so, especially should the reconsideration process become even more protracted. Defendants have had an undisturbed year in which the "integrity of the administrative process" has been able to proceed. *Id*. at 11 (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)).[8] Just as the D.C. Circuit observed with respect to remand, *supra* page 20-21, courts need not afford agencies indefinite time to consider whether to change a rule. The same equitable principles apply here.

Defendants give no serious consideration to the prejudice that the stay would cause Plaintiffs. Just as with indefinite remand, the indefinite stay would be untethered from the effective date of the 2021 Rule, raising the significant possibility that the Rule would go into effect while the case remains stayed, causing irreparable injury to Plaintiffs. Plaintiffs would also lose their periodic opportunities to confer with Defendants as to their progress toward a new rule and to seek action from the Court if there is no such progress. Finally, as with the requested remand, the requested stay is not time-limited, risking even further delay in resolving this matter

---

[8] Defendants make the point that HHS personnel are also reviewing a regulation promulgated under Section 1557 of the Affordable Care Act, implying that Plaintiffs should appreciate that Defendants are reconsidering multiple harmful regulations simultaneously. Mot. at 10 & n.5. On the first day of his Presidency, however, President Biden directed HHS (and other federal agencies) to consider whether it is necessary to amend prior regulations or issue new regulations in light of a newly announced federal policy to prevent and combat discrimination on the basis of gender identity or sexual orientation, an order that directly implicates both the 2021 Rule and the Section 1557 rule. *See* Exec. Order No. 13988, 86 Fed. Reg. 7023 (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/executive-order-preventing-and-combating-discrimination-on-basis-of-gender-identity-or-sexual-orientation/. Respectfully, Plaintiffs do not believe that it is unreasonable to expect that HHS attend to both rules, each of which implicates this high priority Administration policy.

and determining whether the regulatory nondiscrimination protections Plaintiffs support will continue to exist. The requested stay should be denied.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Defendants' request for remand without vacatur and, instead, vacate and remand the 2021 Rule, either immediately or after a reasonable period of time. In the alternative, the Court should deny Defendants' motion altogether.

Dated: January 26, 2022                                   Respectfully submitted,


/s/ *Robin Thurston*
Robin Thurston (D.C. Bar No. 1531399)
Kristen Miller (D.C. Bar No. 229627)
Sean Lev (D.C. Bar No. 449936)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 701-1782
rthurston@democracyforward.org
kmiller@democracyforward.org
slev@democracyforward.org

M. Currey Cook (NY Bar No. 4612834)**
Lambda Legal Defense and Education Fund
120 Wall St., 19th Fl.
New York, New York 10005
(212) 809-8585
ccook@lambdalegal.org

Karen L. Loewy (DC Bar No. 1722185)
Sasha Buchert (OR Bar No. 070686)**
Lambda Legal Defense and Education Fund
1776 K Street, N.W., 8th Floor
Washington, DC 20006-2304
klowey@lambdalegal.org
sbuchert@lambdalegal.org
(202) 804-6245

Peter T. Barbur (NY Bar No. 2260545)*

Katherine D. Janson (NY Bar No.
4404612)*
Rebecca J. Schindel (NY Bar No.
5528500)*
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com
kjanson@cravath.com
rschindel@cravath.com

Counsel for Plaintiffs
* *Pro hac vice* applications filed
** *Pro hac vice* applications forthcoming