UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FACING FOSTER CARE IN ALASKA, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>  Defendants. | Case No. 1:21-cv-308-JMC |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR REMAND WITHOUT VACATUR OR, IN THE ALTERNATIVE, A STAY OF PROCEEDINGS**

Pursuant to Local Civil Rule 7(d) and the Court's prior Order, ECF No. 30, Defendants U.S. Department of Health and Human Services ("HHS") and Xavier Becerra, in his official capacity as Secretary of HHS, hereby file this reply brief in support of their motion for a remand without vacatur or, in the alternative, for a stay of proceedings, ECF No. 28 ("Mot."), and in response to Plaintiffs' opposition memorandum, ECF No. 31 ("Opp'n").

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

I.   REMAND WOULD NOT UNDULY PREJUDICE PLAINTIFFS .......................................................... 3

   A.   Plaintiffs' Claims to Prejudice Are Overstated .......................................................... 3

   B.   Necessity Need not be Demonstrated for an Agency Remand, Which Achieves Other Benefits ............................................................................................................ 6

   C.   Neither Specificity Nor a Time Limit is Required for a Remand ............................. 7

II.  REMAND WITH VACATUR WOULD NOT BE APPROPRIATE HERE ............................................ 8

   A.   Plaintiffs Offer No Precedent for their Proposal. ...................................................... 9

   B.   *Allied-Signal* Has No Application Here. ................................................................... 9

III. A STAY OF PROCEEDINGS WOULD BE AN APPROPRIATE ALTERNATIVE. ............................. 12

CONCLUSION ............................................................................................................................. 13

## INTRODUCTION

Plaintiffs do not dispute that HHS has raised substantial and legitimate concerns with its prior action, which almost always suffices to grant a motion for remand. Mot. 5-6 (collecting cases). Nor do Plaintiffs argue that Defendants' request is frivolous or made in bad faith, which generally are the only instances in which courts deny such motions. *Id.* at 6 (collecting cases). Instead, Plaintiffs argue that remand without vacatur is prejudicial and unnecessary. Neither of those arguments should give the Court pause.

First, while courts consider prejudice to the non-moving party before granting a motion for remand, any such prejudice is *de minimis* here. There is little reason to think that a remand would prolong HHS's reconsideration process, or would risk the 2021 Rule's going into effect either before HHS's actions on remand are complete, or before Plaintiffs have a chance to renew their motion for preliminary injunctive relief, ECF No. 8 ("TRO Motion"). The Parties have stipulated to four postponements of the Rule's effective date and, in all likelihood, would do so again if needed. And, in all events, Plaintiffs face little harm from further delaying the repeal of non-discrimination provisions that are not being enforced, and have not been enforced since November 2019.

Second, necessity is not the touchstone of a motion for voluntary remand. Indeed, Plaintiffs cite no case in which necessity was even a factor in the court's decision. To the contrary, even if Plaintiffs are right that a remand is not *required* before HHS can exercise any of its administrative options, courts routinely grant such motions nonetheless. The virtue of the voluntary remand is that it pauses judicial proceedings while an agency reconsiders its action, which conserves resources and ensures that the Court does not proceed to examine an administrative record that may soon be obsolete.

The Court should reject Plaintiffs' request to remand *and vacate* the 2021 Rule. That would essentially accord Plaintiffs complete relief on the merits of their claims, which have not been

litigated. In the vast majority of cases cited by Plaintiffs, the courts granted vacatur at the agency's request or after determining that the action was legally defective. While a minority of district courts outside this circuit have claimed the power to vacate rules without determining that they are unlawful, the better view (expressed by courts in this district) is that they should not. *See Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-36 (D.D.C. 2010) (refusing to vacate a rule "without making a determination of the merits"); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) (refusing to vacate rule "without judicial consideration of the merits"); *WildEarth Guardians v. Bernhardt*, No. 1:20-cv-56-RC, 2020 WL 6255291, at *1 (D.D.C. Oct. 23, 2020) ("The Court remands the decisions without vacatur because it has not reviewed the [background] underlying the leasing decisions—therefore, it has no basis to vacate the agency action."); *cf. Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 557 (D.C. Cir. 2015) (refusing to vacate a rule based on the agency's consent alone). Instead, the D.C. Circuit has been emphatic that motions for voluntary remand *without vacatur* should usually be granted when the purpose of the remand is to allow an agency to reconsider its action.

**BACKGROUND**

The background of this case, for purposes of the instant motion, is essentially undisputed. *Compare* Mot. 2-4 *with* Opp'n 2-7. Defendants would only clarify two points here. First, Defendants have not conceded that Plaintiffs would face irreparable harm if the 2021 Rule went into effect. *Cf.* Stipulation 2 ("*Plaintiffs maintain* that—for the reasons expressed in their Motion and supporting papers—they face irreparable injury if the Rule's February 11, 2022, effective date were not postponed…") (emphasis added), ECF No. 17. This fact bears on Plaintiffs' prejudice arguments, addressed below. Second, Defendants have not conceded that the 2021 Rule is arbitrary and capricious, contrary to law, or otherwise invalid. *See id.* at 1 ("This stipulation is without prejudice to any positions Plaintiffs or Defendants might take on the merits of Plaintiffs' [TRO]

Motion[.]"). This fact bears on the application of the *Allied-Signal* framework, addressed below.

Defendants have stipulated only that the interests of justice warranted postponing the 2021 Rule's effective date while HHS reviewed that rule. The instant motion furthers the interests of justice by enabling the agency to act on the substantial and legitimate concerns that it has with the Rule, and by preventing potentially needless litigation over that Rule. *See* Mot. 6-7.

**ARGUMENT**

**I.    REMAND WOULD NOT UNDULY PREJUDICE PLAINTIFFS.**

Plaintiffs cite only one case in which the court denied a motion for remand on prejudice grounds: *Utility Solid Waste Activities Group v. EPA*, 901 F.3d 414 (D.C. Cir. 2018). *See generally* Opp'n 8-11. But that motion was denied "for *two* reasons." *Id.* at 436 (emphasis added). Not only would remand prevent vindication of claims brought by certain petitioners, who objected to the remand, but the statutory-authority issue sought to be remanded was "intertwined with any exercise of agency discretion going forward," and could thus stall litigation on the other, un-remanded issues. *Id.* at 437. "*Given that*, the EPA ha[d] not met its burden of justifying its last-minute request for a remand." *Id.* (emphasis added). The exceptional circumstances in *Utility Solid Waste* are not present here. And as that case affirms, courts "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Id.* at 436 (quoting *Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 381, 386 (D.C. Cir. 2017)). The Court should do so here.

**A.    Plaintiffs' Claims to Prejudice Are Overstated.**

Plaintiffs argue primarily that remand without vacatur would "likely cause further delay." Opp'n 8. But Plaintiffs have not shown that they would suffer from any delay or that a remand would in fact cause greater delay. The Parties have agreed four times to postpone the 2021 Rule's effective date and hold this case in abeyance, and the Court has granted their stipulated request

3

every time. Assuming, then, that Plaintiffs would stipulate to another postponement of the effective date of the 2021 Rule—which is only logical, given that their lawsuit is designed to keep the 2021 Rule from going into effect—there is no reason to think that a remand would injure Plaintiffs or that HHS will take *longer* to complete its review upon remand than it would if the case proceeded as it has for the past year. A voluntary remand without vacatur is hardly more "indefinite" (Opp'n 9) than continued stipulated postponements under 5 U.S.C. § 705.

Plaintiffs suggest that "Defendants' policy priorities and views may change with the passage of time." Opp'n 10. But as Defendants have affirmed, it is Administration policy "to prevent and combat discrimination on the basis of gender identity or sexual orientation, and to fully enforce Title VII and other laws that prohibit discrimination on the basis of gender identity or sexual orientation." Mot. 6 (quoting Executive Order 13,988, 86 Fed. Reg. 7,023, 7,023 (Jan. 20, 2021)). That policy is foundational to the Administration's views.[1] Even less likely is Plaintiffs' suggestion that the remand will last another *three years* and thus potentially spill into a "change in administration." Opp'n 10.

Plaintiffs fear the "extremely prejudicial possibility that the [2021] Rule will go into effect during remand." Opp'n 9; *see also id.* at 10-11. But as Plaintiffs acknowledge, "the remand is untethered from future postponements of the effective date of the challenged Rule." *Id.* at 8-9. The Parties can stipulate to another postponement of the Rule's effective date after the remand, if necessary.[2] And even if the 2021 Rule were about to take effect at some point in the future, Plaintiffs could revive their TRO motion, which is on file and currently held in abeyance. In short,

---

[1] As Defendants noted in their motion, HHS has evidenced publicly its commitment to vindicating this policy through regulatory and administrative action. *See* Mot. 1 (citing separate rulemaking under Section 1557 of the Affordable Care Act); *id.* at 8 & n.4 (citing rescission of waiver letters granted under RFRA to certain States).

[2] Plaintiffs suggest that they would lose "procedural protections" if the remand were granted. Mot. 11 n.4. But they may still "seek information and negotiate in advance of" any further § 705 postponement, if HHS has not taken action by April 18, 2022. *Id.*

there is little chance that the 2021 Rule will go into effect during the remand, and Plaintiffs would almost certainly have an opportunity to try to prevent it from doing so.

Plaintiffs argue that remand without vacatur would prevent them "from planning their services based on known regulatory requirements." Opp'n 8. They argue extensively, drawing from declarations filed in support of their TRO motion, that the organizational Plaintiffs will face various harms if the 2021 Rule goes into effect. Opp'n 10-11. But those arguments overlook that the 2016 Rule is not currently being enforced and has not been enforced since at least November 2019. *See* HHS, *Notification of Nonenforcement of Health and Human Services Grants Regulation*, 84 Fed. Reg. 63,809 (Nov. 19, 2019). Thus, whether or not the 2021 Rule goes into effect, the 2016 Rule's non-discrimination protections are not currently being enforced.

Plaintiffs respond that, even though the 2016 Rule has not been enforced for more than two years, formally repealing it would "exacerbate[]" Plaintiffs' harms and "cause[] independent harms." Opp'n 11 (citing TRO Mot. 42). Those arguments have not been conceded and would be better addressed upon reinstatement of Plaintiffs' TRO motion, if that becomes necessary. For present purposes, it suffices to say that Plaintiffs offer no concrete example of a federal regulation, formally *not* enforced by its promulgating agency, nonetheless "shap[ing] the behavior of regulated parties." Opp'n 11. The one cited declaration, from Mr. Aaron Tax at Services & Advocacy for GLBT Elders ("SAGE"), merely says that "it was helpful to be able to point to the baseline protections provided by the 2016 Grants Rule." Tax Decl. ¶ 19, ECF No. 8-5. That statement, echoed substantially verbatim by other declarants,[3] fails meaningfully to grapple with the fact that the 2016 Rule has not been enforced for years. None of Plaintiffs' declarants offers an actual example where a regulatory party's behavior was shaped by the un-enforced provisions in the 2016 Rule. This claimed prejudice is, therefore, no reason to depart from the D.C. Circuit's

---

[3] *See* Metivier Decl. ¶ 18, ECF No. 8-2; Brogan-Kator Decl. ¶ 13, ECF No. 8-4; Waguespack Decl. ¶ 12, ECF No. 8-6.

5

longstanding practice of granting agency motions for remand.

### B. Necessity Need not be Demonstrated for an Agency Remand, Which Achieves Other Benefits.

Prejudice aside, Plaintiffs argue that the motion for remand should be denied because it is "unnecessary." Opp'n 12-13. That argument is a red herring. To be clear, Defendants do believe that some of the administrative options available to HHS are more properly exercised after the rulemaking is remanded to the agency. But even if Plaintiffs are right that every option is also available without a remand, that is no reason to deny Defendants' motion.

Necessity is not the touchstone of an agency remand. Rather, courts in the D.C. Circuit "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Util. Solid Waste*, 901 F.3d at 436 (quoting *Limnia, Inc.*, 857 F.3d 379 at 381, 386). "Remand may also be appropriate if the agency's motion is made in response to 'intervening events outside of the agency's control,'" *id.*, such as the change in Administrations that occurred soon after the 2021 Rule was finalized. But "even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." *Id.* (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). These remands are granted, not out of necessity, but because they "ha[ve] the benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.'" *Id.* (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)).

Plaintiffs cite no case where the court asked whether a motion for remand was necessary before granting it. Nor does their argument make logical sense, even on its own terms: if remand is not necessary to take further administrative action, *and* an agency movant must demonstrate necessity to obtain a remand, then no motion for remand would ever be granted. *Contra Util. Solid Waste*, 901 F.3d at 436 (courts in this circuit "*generally grant* an agency's motion to remand so

6

long as the agency intends to take further action with respect to the original agency decision on review.") (emphasis added).

Plaintiffs question whether HHS intends "to take action with respect to the *original agency decision on review*." Opp'n 12 (quoting *Limnia*, 857 F.3d at 386) (emphasis added by Plaintiffs). Defendants do not know what prompted this concern, but to avoid all doubt, the regulatory and administrative options contemplated by HHS would all be with respect to the 2021 Rule—which is the original agency decision on review.

### C. Neither Specificity Nor a Time Limit is Required for a Remand.

Plaintiffs contrast the "lack of specificity" in HHS's plans with "cases in which an agency's articulation of its plans [was] sufficiently precise to justify remand over the opposition of a plaintiff." Opp'n 12. But the "plans" of the Financial Crimes Enforcement Network ("FinCEN") in *FBME Bank Limited v. Lew*, 142 F. Supp. 3d 70 (D.D.C. 2015), were hardly "precise." Rather, after the district court preliminarily enjoined FinCEN's rule, the agency moved for a remand while it "undertakes a new notice-and-comment process and *reevaluates potential alternatives*." *Id.* at 73 (emphasis added). That proposal was enough to assure the court "that FinCEN has identified concerns that *may be* alleviated by a voluntary remand." *Id.* (emphasis added).[4] In this case, HHS has identified substantial and legitimate concerns with the 2021 Rule, which may be alleviated by

---

[4] Plaintiffs' other two cases are similarly unavailing. In *American Forest Resource Council v. Ashe*, the Fish and Wildlife Service merely asked for the "opportunity" to meet the "higher burden" imposed by courts on the agency to explain in detail why designated areas meet the statutory definition of critical habitat. 946 F. Supp. 2d 1, 41-42 (D.D.C. 2013). It is not evident from that opinion that FWS provided any precise plan on remand.

In *Sierra Club v. Van Antwerp*, the Army Corps of Engineers was "*considering* reinstatement, modification, or revocation of [a] suspended permit," and moved for a voluntary remand in the meantime. 560 F. Supp. 2d 21, 24-25 (D.D.C. 2008) (emphasis added). Specifically, the agency intended "to carefully examine whether the repeated turbid discharges have any effect on the assurances provided by [the permittee] and the Corps' reliance on them." *Id.* at 24. There were several possible outcomes of the remand: "[b]ased on the Corps' investigation, it may conduct additional environmental review . . . [and] will ultimately decide to affirm, modify, or revoke the permit." *Id.* That proposal is no more precise than HHS's here.

a voluntary remand. Mot. 6 ("HHS takes seriously its obligation to explain adequately the bases on which it promulgates regulations, to ground those regulations in firm statutory authority, and to balance appropriately the interests implicated by the Religious Freedom Restoration Act."). That is enough to grant the motion.

Plaintiffs cite *American Public Gas Association*, -- F.4th --, 2022 WL 151923, at *8 (D.C. Cir. Jan. 18, 2022)), for the proposition that open-ended remands can cause delay, and ask that the Court set a time limit for HHS. Opp'n 8, 19-20. But in *American Public Gas*, the D.C. Circuit had already found the DOE's rule invalid under the Administrative Procedure Act—a conclusion that DOE did not even contest. The remaining question, therefore, was "the matter of a proper remedy." *Id.* at *8. It may make sense to set a time limit when the remanded rule has already been found unlawful, *see id.* (collecting authorities), because otherwise, "[t]he agency may have little or no incentive to fix the *deficient* rule." *Id.* at *8 (emphasis added). But the 2021 Rule has not been found "deficient" by any court, and Defendants have not conceded any deficiencies, so the concerns expressed in *American Public Gas Association* are not present here.

Plaintiffs also invoke *Utility Solid Waste* in support of their plea for a deadline. Opp'n 13. But the fact that EPA "submitted a proposed timeline to the court" in that case, 901 F.3d at 437, does not make such a timeline a *sine qua non* of agency remands. Plaintiffs cite no authority for the proposition that a timeline is required before a court will remand a rulemaking that has not been found invalid in any respect.

II.     **REMAND WITH VACATUR WOULD NOT BE APPROPRIATE HERE.**

Defendants agree that vacatur is an equitable remedy, and that the Court has the power to vacate the 2021 Rule if it is found unlawful. *See* Opp'n 14. But that is not the situation before the Court, and Plaintiffs cite scant authority supporting their request to vacate the Rule *now*, over Defendants' objection, before any of the merits have been litigated.

8

### A. Plaintiffs Offer No Precedent for their Proposal.

Remand with vacatur is tantamount to victory on the merits for an APA plaintiff. *See* 5 U.S.C. § 706(2); *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002). Thus, Plaintiffs are essentially asking for final relief on the merits, over Defendants' objection, before the Parties have even begun litigating the case.

In the cases from this district cited by Plaintiffs, the agency had *asked* for vacatur, either through its own motion or by consent decree. *See* Opp'n 14-15 (citing *Home Builders Ass'ns of N. Cal. v. Norton*, 293 F. Supp. 2d 1, 2 (D.D.C. 2002) ("The Proposed Consent Decree provides that the current critical habitat designation be vacated and remanded to the agency for a new rulemaking."); *Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 101 (D.D.C. 2002) (granting motion by the Fish and Wildlife Service to vacate and remand its own rules); *Nat'l Ass'n of Home Builders v. Evans*, No. 00-cv-2799, 2002 WL 1205743, at *1 (D.D.C. 2002) ("The proposed consent decree contains a number of provisions worth mentioning. First, the critical habitat regulations that are at the center of this lawsuit are vacated and remanded to NMFS for new rulemaking.")). That is not the case here.

### B. *Allied-Signal* Has No Application Here.

Plaintiffs ask the Court to apply the *Allied-Signal* framework, Mot. 16-20, but that inquiry is aimed at the appropriate remedy—specifically, whether to vacate—once an agency action has been found invalid. *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) ("An *inadequately supported* rule, however, need not necessarily be vacated.") (emphasis added). There has been no such finding here. Plaintiffs urge "the seriousness of the Rule's deficiencies," Mot. 14, 17-18, but the Court has not found any such deficiencies. And the Court need not do so before granting Defendants' motion for a voluntary remand without vacatur.

Plaintiffs observe that the court in *Stand Up for California! v. U.S. Department of the Interior*, No. 12-cv-2039-BAH, 2013 WL 12203229 (D.D.C. Dec. 16, 2013), applied the *Allied-*

9

*Signal* framework to a pre-merits motion for remand without vacatur. *See* Mot. 15. But in that case, the Department of Interior had moved for a stay of proceedings, and partial remand, expressly "in order to remedy a minor procedural defect." *Id.* at *1 (citing DOI's motion). Thus, while the motion for remand was "voluntary," it was to cure an admitted and identified defect in the rule. The court understandably applied *Allied-Signal* and found that the defect was "not so great as to cast doubt on whether the federal defendants w[ould] 'be able to substantiate [their] decision on remand.'" *Id.* at *3 (quoting *Allied-Signal*, 988 F.2d at 151). But that analysis is premature where, as here, the agency has not conceded error but merely raised substantial and legitimate *concerns* with the Rule and sought a voluntary remand to reconsider it. That is a recognized ground for remand without vacatur. *Util. Solid Waste*, 901 F.3d at 436 (citing *SKF*, 254 F.3d at 1029).

As Plaintiffs acknowledge, courts are concerned that a voluntary remand with vacatur sidesteps the APA by allowing a repeal of a regulation without notice or comment. Mot. 15-16 (citing *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-36 (D.D.C. 2010); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4-5 (D.D.C. 2009)). Plaintiffs try to assuage these concerns by assuring the Court that it would be exercising *judicial* power, which is not subject to notice-and-comment requirements. Mot. 15-16 (citing *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241 n.6 (D. Colo. 2011)). Combining the footnote from the District of Colorado decision they cite with a recent decision from the Northern District of California, Plaintiffs suggest a free-floating equitable power to vacate rules without either confession of error by the agency or finding of error by the court. *Id.* at 16 (citing *In re Clean Water Act Rulemaking*, -- F. Supp. 3d --, No. 20-cv-04636-WHA, 2021 WL 4924844 (N.D. Cal. Oct. 21, 2021)).[5]

---

[5] In a footnote, Plaintiffs cite three other district-court decisions from within the 9th Circuit, and two others from the 10th Circuit, in which the courts appeared willing to vacate agency action without a final determination on the merits. Opp'n 15 n.6. Many of those out-of-circuit decisions are distinguishable. For example, in *Center for Native Ecosystems v. Salazar*, 795 F. Supp. 2d

10

Those opinions are in error. The APA permits a court to set aside agency action "found to be" arbitrary, capricious, not in accordance with law, etc. *See* 5 U.S.C. § 706(2). The courts cited by Plaintiffs essentially reasoned that, because the APA *doesn't* say that an action *can't* be set aside *without* finding it invalid, courts are free to do so. But the APA's judicial-review provisions are best read to provide for vacatur only when the agency action has been found invalid. As another court in this district put it, the Court "has only two options at this time: either to grant [HHS's] motion for voluntary remand without vacatur or to deny [the] motion and proceed to the merits." *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 42 (D.D.C. 2013). Because Plaintiffs' "claims have not been fully briefed, and the administrative record as to those claims has not been filed," it "would be premature to decide the merits now and the Court [should] not do so." *Id.*

That view is most faithful to the APA's text—providing for vacatur of agency action "found to be" unlawful on certain, enumerated grounds, 5 U.S.C. § 706(2), and requiring such a finding to be based on "the whole [administrative] record or those parts of it cited by a party," *id.* § 706—and keeps with other maxims of administrative law, namely the limited and deferential role that courts play in reviewing agency action. It is also bedrock administrative law that an agency must "give reasons before they rescind rules," which "would be a dead letter" if the Court could short-circuit the APA and vacate a rule in this posture. *Mexichem*, 787 F.3d at 557.

One jurist cited by Plaintiffs posited a "split in authority" on this issue. *See In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *4 (contrasting the District of Colorado case cited above with one from this district, *Carpenters Indus. Council*, 734 F. Supp. 2d at 135-36 (refusing to vacate rule without a finding on the merits, even where the agency confessed legal error)). But there more decisions, besides *Carpenters Industry Council*, that have also taken Defendants' view.

---

1236 (D. Colo. 2011) and *Natural Resources Defense Council v. U.S. Department of the Interior*, 275 F. Supp. 2d 1136 (C.D. Cal. 2002), the agency asked for vacatur. But in any event, the better view, adopted by courts in this district, is that vacatur is inappropriate in this posture.

11

*See Am. Forest Res. Council*, 946 F. Supp. 2d at 45-46 (declining to apply the first *Allied-Signal* factor because "the Court is not in a position to fully assess the seriousness of the deficiencies or to predict whether or how the new designation will differ from the current designation"); *Nat'l Parks Conservation Ass'n*, 660 F. Supp. 2d at 5 (refusing to vacate rule "without judicial consideration of the merits"); *WildEarth Guardians v. Bernhardt*, No. 20-cv-56-RC, 2020 WL 6255291, at *1 (D.D.C. Oct. 23, 2020) ("The Court remands the decisions without vacatur because it has not reviewed the [background] underlying the leasing decisions—therefore, it has no basis to vacate the agency action."); *see also California v. Regan*, No. 20-CV-03005-RS, 2021 WL 4221583, at *1 (N.D. Cal. Sept. 16, 2021) (positing, albeit in dicta, that the court would not have granted Plaintiffs' request for remand *with vacatur* because "there has been no evaluation of the merits—or concession by defendants—that would support a finding that the rule should be vacated."); *cf. Mexichem*, 787 F.3d at 557.

The same judge also acknowledged that the "broad guidance" from the Ninth Circuit, on which he was relying, had been given "in opinions where the agency action *had been found erroneous*." *Id.* (emphasis added). That "guidance" is therefore inapplicable here; those decisions were applying the *Allied-Signal* framework to determine the proper *remedy* after illegality had been determined. Defendants urge the Court to follow the lead of others within this district, which have rightly refused to vacate rules absent a finding of impropriety.

### III.   A STAY OF PROCEEDINGS WOULD BE AN APPROPRIATE ALTERNATIVE.

The Parties seem to agree that there is substantial overlap in their arguments regarding an agency remand and regarding a stay of proceedings. *See* Mot. 9-11; Opp'n 20. For example, the prejudice claimed by Plaintiffs (Opp'n 21-22) has been addressed above. Defendants would only add that, just as Plaintiffs could seek preliminary injunctive relief if the 2021 Rule were remanded and then about to go into effect at some future time, Plaintiffs could move to lift any stay if they

12

perceived heightened prejudice. In the meantime, they would receive status reports every 60 days if Defendants' proposal is accepted by the Court. In sum, Plaintiffs face no serious prejudice from a stay.

Plaintiffs also argue that no resources would be conserved by a stay of proceedings, because "[t]he litigation has not been demanding of Defendants or the Court." Opp'n 20. But that, of course, is because the Parties have not yet litigated the merits of Plaintiffs' claims. That litigation would be resource-intensive, and indeed, Plaintiffs suggest in their opposition that they *would* "demand[] that Defendants both reconsider the challenged Rule and defend it simultaneously . . . should the process become even more protracted." *Id.* at 21. The very fact that such litigation is possible, as Plaintiffs have reminded the Court through their latest filing, is ample reason to grant a stay.

## CONCLUSION

The Court should grant a voluntary remand without vacatur so that HHS can continue to assess and pursue all of its administrative options with respect to the 2021 Rule. In the alternative, the Court should stay the case pending the conclusion of HHS's reconsideration of the challenged Rule. In either case, Defendants respectfully suggest that they file status reports every 60 days.

Dated: February 2, 2022                                                Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Jason C. Lynch*
Jason C. Lynch (D.C. Bar No. 1016319)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 11214

Washington, DC 20005
Tel: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendants*