UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FACING FOSTER CARE IN ALASKA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 1:21-cv-308 |

**DEFENDANTS' MOTION FOR REMAND WITH VACATUR**

Defendants U.S. Department of Health and Human Services ("HHS") and Xavier Becerra, in his official capacity as Secretary of HHS, move the Court for a remand with vacatur of the portions of the agency rule challenged in this case.

Defendants have conferred with Plaintiffs, who do not oppose this motion. Accordingly, no opposition or reply brief will be necessary, and the Court can resolve this motion at its earliest convenience.

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................. 1

**BACKGROUND** ............................................................................................................... 1

    **I.**    **THE CHALLENGED RULE.** ................................................................................. 1

    **II.**    **THE 2016 RULE'S NON-ENFORCEMENT.** ......................................................... 2

    **III.**    **THE PROCESS FOR PROMULGATING THE 2021 RULE.** ..................................... 3

**LEGAL STANDARDS** ..................................................................................................... 5

**ARGUMENT** ..................................................................................................................... 6

    **I.**    **DEFENDANTS HAVE CONCLUDED THAT THE 2021 RULE WAS PROMULGATED IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT.** 6

    **II.**    **VACATUR IS THE APPROPRIATE REMEDY.** ....................................................... 8

**CONCLUSION** ................................................................................................................. 9

## INTRODUCTION

Plaintiffs challenge certain amendments to the U.S. Department of Health and Human Services' universal grants regulation. Defendants previously moved to remand the challenged portions of the rule without vacatur. *See* ECF No. 28. Since then, however, counsel for Defendants have learned about anomalies in the process through which the rule was promulgated. In light of that new information, Defendants have concluded that the challenged portions of the rule were not promulgated in compliance with the Administrative Procedure Act. Defendants therefore now move for a remand *with* vacatur of the challenged portions of the rule (those that amend 45 C.F.R. §§ 75.101(f), 75.300(c), and 75.300(d)).

## BACKGROUND

**I.    THE CHALLENGED RULE.**

This case concerns amendments to a portion of HHS's rule titled *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards*, 79 Fed. Reg. 75,871 (Dec. 19, 2014), known as the "UAR," which applies to all recipients and sub-recipients of federal financial assistance, whether via grants or cooperative agreements. Codified at 45 C.F.R. Part 75, the UAR prescribes certain general requirements (Subpart B); a host of pre- and post-award requirements (Subparts C and D); the applicable cost principles (Subpart E); and a number of audit requirements (Subpart F). The first post-award requirement in Subpart D is that HHS "manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with U.S. statutory and public policy requirements." 45 C.F.R. § 75.300(a). That provision has been amended twice in recent years, through a 2016 rulemaking and through the 2021 rulemaking at issue in this case, both of which are cited in the margin.[1] For ease of reference, Defendants reproduce the relevant versions below:

---

[1] *See* HHS, *Health and Human Services Grants Regulation*, 81 Fed. Reg. 45,270 (July 13, 2016) ("2016 Proposed Rule"); HHS, *Health and Human Services Grants Regulation*, 81 Fed. Reg.

| **2016 Rule (45 C.F.R. § 75.300)** | **2021 Rule (45 C.F.R. § 75.300)** |
|---|---|
| (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards. | (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services, to the extent doing so is prohibited by federal statute. |
| (d) In accordance with the Supreme Court decisions in *United States* v. *Windsor* and in *Obergefell* v. *Hodges,* all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage. | (d) HHS will follow all applicable Supreme Court decisions in administering its award programs. |

The 2016 and 2021 rules also amended UAR provisions related to payments, costs, and public access to records. However, because only the amendments to 45 C.F.R. §§ 75.101(f), 75.300(c), and 75.300(d) are at issue here, this motion uses "2016 Rule" and "2021 Rule" to refer to those provisions.

## II. THE 2016 RULE'S NON-ENFORCEMENT.

The 2016 Rule went into effect on January 11, 2017. *See* 2016 Rule at 89,393. Nine days later, there was a change in administrations, after which "the Department and its grantmaking agencies did not make, and have not made, any concerted effort to obtain recipient compliance with" the 2016 Rule. *See* 2021 Rule, 86 Fed. Reg. at 2,273. Nearly three years later, HHS published

---

89,393 (Dec. 12, 2016) ("2016 Rule"); HHS, *Health and Human Services Grants Regulation*, 84 Fed. Reg. 63,831 (Nov. 19, 2019) ("2021 Proposed Rule"); HHS, *Health and Human Services Grants Regulation*, 86 Fed. Reg. 2,257 (Jan. 12, 2021) ("2021 Rule").

2

a formal notice of nonenforcement contemporaneously with its notice of proposed rulemaking to revisit the 2016 Rule. HHS, *Notification of Nonenforcement of Health and Human Services Grants Regulation*, 84 Fed. Reg. 63,809 (Nov. 19, 2019) ("Notice of Nonenforcement"); 2021 Proposed Rule, 84 Fed. Reg. 63,831. The notice explained that "the regulatory actions, promulgated through the December 12, 2016 final rules, 81 Fed. Reg. 89393, namely, the additions of . . . 75.300(c) and (d) . . . will not be enforced pending repromulgation." Notice of Nonenforcement, 84 Fed. Reg. at 63,811. Thus, the 2016 Rule has never been enforced.

### III.   THE PROCESS FOR PROMULGATING THE 2021 RULE.

The 2021 Proposed Rule was published on November 19, 2019. *See* 84 Fed. Reg. 63,831. From November 19 to December 19, 2019, HHS took public comments on the proposed rule. 2021 Rule, 86 Fed. Reg. at 2,261. During that process, the public submitted "well over 100,000 public comments." *Id.*

HHS delegated primary review of those comments to a contractor, the Health Services Advisory Group ("HSAG"). HSAG prepared a report ostensibly summarizing the comments received. *See* Ex. 1 to Declaration of Renee Cooper, HSAG, *Summary of Comments – Final Report* (Apr. 8, 2020) ("HSAG Final Report"). Hoping to expedite the rulemaking process and promulgate the 2021 Rule by mid-May, HHS capped at 480 hours the time that HSAG could spend reviewing the comments. Cooper Decl. ¶ 7. To complete its review under that ceiling, HSAG proposed a sampling methodology to HHS. *Id.* Under that methodology, HSAG would review 3,145 comments that "represent," as HSAG put it, the 121,039 comments received. *Id.* HHS accepted HSAG's proposal on March 23, 2020. *Id.*

HSAG's sampling methodology did not merely pull a random percentage of comments. *See generally* HSAG Final Report 3 ("Sampling Methodology"). HSAG first ran a "deduplication" process, *id.*, which is a common practice used by agencies to screen out comments that are

3

substantially duplicative of others. That process identified 90,013 comments as duplicative of 1,961 other comments (meaning that a comment shared at least 70% of text with another comment). Of those 1,961 comments, referred to as "pivot" comments, HSAG reviewed all 881 comments that were duplicated more than once and 10% of the comments that were duplicated exactly once (108 of 1080 such comments).

Within the 29,065 unique, non-pivot comments—*i.e.*, comments that were not duplicated by any other comment—HSAG distinguished between comments submitted by organizations and those submitted by individual commenters. HSAG reviewed all 301 of the unique comments from organizations that were associated with between 1-20 comments.[2] HSAG reviewed 25% of unique comments from organizations associated with more than 20 comments (181 of 723 such comments). Finally, HSAG reviewed 6% of unique comments from individuals (1,682 of 28,041 such comments).

The following table summarizes HSAG's sampling methodology:

Table B-1: Sampled Comments for Review

| Population | Sample Frame | Percentage of Comments Reviewed | Sample |
|---|---|---|---|
| Organizations with 1-20 comments | 301 | 100% | 301 |
| Organizations with >20 comments[1] | 723 | 25.00% | 181 |
| Individual comments with more than one duplicate (Pivot comments) | 881 | 100% | 881 |
| Individual comments that were duplicated only once (Pivot comments) | 1,080 | 10.00% | 108 |
| Unique individual comments | 28,041 | 6.00% | 1,682 |
| Total | 31,026 | 10.16% | 3,153 |

[1] Only two organizations were associated with more than 20 comments each: one with 114 comments, and the other with 609.

The final HSAG report was provided to HHS on April 8, 2020.

---

[2] Organizations submit comments on their own behalf, but they also package and submit comments from others—*e.g.*, members of the organization. Thus, there can be multiple, textually unique comments associated with a single organization.

In parallel with HSAG's review, others at HHS reviewed comments independently. For example, one attorney reviewed the organizational comments and also searched the comments for certain terms, such as "RFRA," to locate comments addressing certain significant topics. Cooper Decl. ¶ 9. Others at HHS who worked on the 2021 Rule but have since left the agency may also have reviewed comments on their own.

The 2021 Rule was finalized on January 12, 2021, with an effective date of February 11, 2021. The Federal Register publication of the 2021 Rule did not explain HSAG's sampling methodology. The 2021 Rule's effective date has been extended via several postponements under 5 U.S.C. § 705, most recently until July 1, 2022.

## LEGAL STANDARDS

The Administrative Procedure Act, 5 U.S.C. § 553, prescribes the requirements for substantive rulemaking. After notice is published, "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." *Id.* § 553(c). "After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." *Id.*

"The basis and purpose statement is not intended to be an abstract explanation addressed to imaginary complaints. Rather, its purpose is, at least in part, to respond in a reasoned manner to the comments received, to explain how the agency resolved any significant problems raised by the comments, and to show how that resolution led the agency to the ultimate rule." *Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809, 817 (D.C. Cir. 1975). The basis-and-purposes statement, also referred to as the rule's preamble, "must address significant comments," and in that respect "forms the basis for judicial review." *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 64 (D.C. Cir. 2020) (citing *Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 512 F.3d 696, 700 (D.C. Cir. 2008)).

Under the APA, the reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), (D). Once the court finds an APA violation, "[t]he decision whether to vacate depends on [1] the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and [2] the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (quotation marks omitted). "There is no rule requiring either the proponent or opponent of vacatur to prevail on both factors." *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015) (collecting cases).

## ARGUMENT

**I.   DEFENDANTS HAVE CONCLUDED THAT THE 2021 RULE WAS PROMULGATED IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT.**

An agency must consider "the relevant matter presented," 5 U.S.C. § 553(c), and then issue a preamble that responds to "any significant problems raised by the comments." *Rodway*, 514 F.2d at 817. Based on their review of the rulemaking process, Defendants have concluded that HHS did not satisfy these requirements in the circumstances of this case.

First, HHS reviewed only a small fraction of the non-duplicative comments submitted. After de-duplicating comments, HHS was left with 31,026 unique and "pivot" comments. HHS's contractor reviewed only 10.16% of those comments. That included all pivot comments with more than one duplicate, and all comments from organizations associated with 1-20 comments. But HSAG reviewed only 25% of unique comments from organizations associated with more than 20 comments; only 10% of pivot comments that were only duplicated once (essentially, pairs of comments); and only 6% of unique comments from individuals. On its face, this process—even in tandem with the *ad hoc* review by individuals, described above—presents a substantial risk that

6

the agency failed to address significant concerns raised, or viable alternatives suggested, by the public.

That is not to say that sampling comments is a *per se* violation of the APA. Agencies do not review public comments as an end unto itself, but so that the agency can "consider and respond to *significant* comments received during the period for public comment." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (emphasis added). An agency "need not consider every alternative proposed nor respond to every comment made." *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 215 (D.C. Cir. 2013). "Rather, an agency must consider only significant and viable and obvious alternatives." *Id.* "The failure to respond to comments is significant only insofar as it demonstrates that the agency's decision was not based on a consideration of the relevant factors." *Covad Commc'ns Co. v. FCC*, 450 F.3d 528, 550 (D.C. Cir. 2006); *id.* (the agency "need not address every comment, but it must respond in a reasoned manner to those that raise significant problems.") (quoting *Reytblatt v. U.S. Nuclear Regulatory Comm'n*, 105 F.3d 715, 722 (D.C. Cir. 1997)).

In some circumstances, a sampling of comments could capture every significant concern, problem, and alternative raised by the public. That would likely depend on the size of the sample collected; the methodology used to select the sample; the subject matter of the proposed rule; the number and types of issues implicated by that rule; and the agency's experience, if any, with similar rules. If an agency undertakes a reasonable effort to sample public comments, through a methodology designed to capture all significant issues and proposed alternatives, that may well satisfy the APA.

But upon further review, Defendants have concluded that such an approach was not taken here. In order to meet a self-imposed deadline, HHS imposed a 480-hour ceiling on its contract with HSAG, which forced the contractor to sample comments. HSAG's proposed methodology

was not designed to capture more efficiently all significant comments raised by the public; it was merely an estimate of what HSAG could accomplish under time and budget constraints that the agency had imposed on itself and its contractor. HSAG never explained how its 10.16% sample of unique and "pivot" comments was representative of the broader pool. Accordingly, HHS cannot conclude that HSAG's review, or the agency's own analysis in the preamble to the 2021 Rule, addressed the full range of significant issues raised by the public.

Removing duplicative comments from an agency's review does not offend the APA. But because HHS reviewed only a small fraction of the non-duplicative comments, did not employ a sampling methodology likely to produce an adequate sample of the comment received, and did not explain its use of sampling in the final rule, Defendants have concluded, in the circumstances of this case, that the 2021 Rule was promulgated in violation of the APA.

**II.   VACATUR IS THE APPROPRIATE REMEDY.**

Once the Court finds an APA violation, the decision whether to vacate depends on (1) the seriousness of the order's deficiencies, and (2) the disruptive consequences of vacatur. *Allied-Signal*, 988 F.2d at 150–51. In this case, the second factor strongly favors vacatur. The court therefore need not consider the first factor.

Vacatur of the 2021 Rule would cause no disruptive consequences for at least two reasons. First, the 2021 Rule has never gone into effect; it has been postponed under 5 U.S.C. § 705 since February 9, 2021, ECF No. 18. *See Am. Petroleum Inst. v. SEC*, 953 F. Supp. 2d 5, 24 (D.D.C. 2013) ("Here, issuers have not yet been required to make disclosures under the Rule, so no disruption will result from vacatur.") (citing *Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166, 179 (D.C. Cir. 2010) (finding vacatur appropriate where "[b]y its own terms, [the invalid rule] has not yet gone into effect").

Second, the purpose of the 2021 Rule is to repeal formally the 2016 Rule. But the 2016

8

Rule has never been enforced, and HHS has stated publicly that it will not enforce the 2016 Rule pending promulgation of a new rule. Notice of Nonenforcement, 84 Fed. Reg. at 63,811. Thus, vacating the 2021 Rule's formal repeal of the 2016 Rule will not cause disruption or change the status quo. *See Burke v. Coggins*, 521 F. Supp. 3d 31, 44 (D.D.C. 2021) ("A return to the status quo causes little or no disruption."). There are also no reliance interests in the 2016 Rule, which has never been enforced, and thus, no "disruptive consequences" from vacating its repeal. *Allied-Signal*, 988 F.2d at 150; *cf. Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (remand without vacatur "is appropriate when vacatur would disrupt settled transactions.").

"A strong showing of one [*Allied-Signal*] factor may obviate the need to find a similar showing of the other." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019) (citing *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1049 (D.C. Cir. 2002)). Given that there are no disruptive consequences to vacatur here, the Court need not rely on the first *Allied-Signal* factor to vacate the 2021 Rule.

## CONCLUSION

Based on their review of the rulemaking process in this case, Defendants have concluded that HHS violated the APA by failing either to review all unique public comments or to employ a methodology reasonably designed to capture the significant comments raised by the public. Given the lack of any disruptive consequences from vacatur, the appropriate remedy is to vacate the challenged portions of the rule (those that amend 45 C.F.R. §§ 75.101(f), 75.300(c), and 75.300(d)); remand the matter to HHS; deny as moot Defendants' pending Motion for Remand Without Vacatur, ECF No. 28, and close this case.

Dated: June 17, 2022                                         Respectfully submitted,

                                                                               BRIAN M. BOYNTON
                                                                               Principal Deputy Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Jason C. Lynch*
Jason C. Lynch (D.C. Bar No. 1016319)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 11214
Washington, DC 20005
Tel: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendants*